I'm Robert Lowen of Gibson, Dun and Crutcher, representing the appellant, Lockheed Martin Corporation. With me is Sarah Schlosser. Now as matters currently stand, your honor, military contractors attempting to enforce important federal rights are often deprived of access to a federal forum to vindicate those rights because they're unable to obtain review from repeated remands. But now that we're properly before this court to contest a sanctions order, Lockheed Martin asked this court to reject plaintiff's position and hold two things. One, that military contractors have the right to remove under section 1442A1 to assert the military contractor defense. That's a lot of briefing for $10,000, Mr. Lowen. Well, we're obviously not here about the $10,000, your honor. It's a rare opportunity to have review of a very important question. These cases come up over and over and over again, and we have a military contractor defense that is rock solid here. It's one that was actually conceded in the court below by my opponent, and yet it got remanded for reasons that we think are improper. I think you're trying to tell us we shouldn't dispose of this in a mem-dispo. I'm probably disposition. Whichever way we go. That's right, your honor. That's exactly what we're saying. I'm not here for anything other than the sanctions. Well, we are here, your honor, because we're here on the sanctions. That's the jurisdictional basis for us being here. But the law is clear in this circuit, your honor, that it is required, this Court is required to go back and review de novo the decision to remand in order to review the propriety of the sanctions. Even though we wouldn't have the authority to reverse? That's correct, your honor. We're not asking to reverse. The district court doesn't have jurisdiction anymore, and so the case is properly had been, you know, is remanded and it's not jurisdictional. But this Court has jurisdiction to consider the sanctions order, and in considering the sanctions order, the Court must review de novo the decision to remand. And so that's why we ask the second issue that we would like this Court to address is the very basis for the district court's decision. We would like this Court to hold that Section 1442 carries with it an independent 30-day clock that runs from the time the defendant knows that it is being sued as a Federal officer. The statute is pretty clear, isn't it? No. Unfortunately, the statute is a little bit unclear on this, your honor, because I think that we have, you're talking about Section 1446. Section 1446 says that you have, if it wasn't otherwise removable, then you have an extra 30 days. But if you look at the successive removal cases, your honor, Kirkbride, O'Brien, SWS, those cases are all cited in our briefs. And in those cases, those cases are indistinguishable from this case except for one fact. And that one fact is that they actually brought and were refused a chance to remove in the first instance. When they came back a second time on a new and different ground, they were allowed to remove. What's the difference here? There should be no difference here, your honor. Was there really an opportunity to remove the first 30 days? There was no opportunity to remove, your honor. It would have been a futile act on our part to remove under those circumstances. And had we attempted to remove ---- I guess it depends a little bit on the use of the word opportunity. Well, maybe, your honor. There was a possibility to remove if you had gotten all of the defendants to agree. So there was that opportunity. Well, we don't think that there was an opportunity to remove, your honor. We think, actually, we think the Harris case is very helpful to us on this point, because the Harris case says you don't have to remove if you'd be in violation of Rule 11 if you tried to. And I think that that's what we have here, your honor, where we have ---- we tried to remove without joinder. You didn't have an opportunity unilaterally to remove. We did not have that opportunity unilaterally to remove. That's right, your honor. You didn't have an opportunity to remove if you had gotten agreement of the parties. If, of the 26 or so defendants in that case, and as indicated by the record, the only evidence on the record here is that these defendants have a policy of not joining in Section B. So you're construing, is the word removable in the first clause of Section 1446B? That's not the word that we're construing, your honor. I would be construing the word by the defendant in the second clause of Section 1446B, because the courts in ---- I know that's sort of what your brief said, but it seemed to me that that's really not ---- Well, your honor, if you look at Kirkbride, it was a Ninth Circuit decision. In Kirkbride, there was ---- An old Ninth Circuit decision. It was, in fact, quote, removable in a technical sense in the sense that they had two prior attempts to remove which were then remanded, okay? In the second attempt to remove in Kirkbride, it was remanded solely on the ground of federal abstention. It was not removed because it was unremovable. And so here you had a case that was technically, quote, removable when I guess within the very narrow reading of Section 1446B, but the Court nevertheless allowed the third removal to stand in Kirkbride under the successive removal cases. Is there a difference between removable and possibly removable? Maybe. And I think that ---- I don't think that the ---- that here when Congress enacted this, given the important federal interest in 1442, that they ever intended for this that anything that's remotely removable, even possibly removable, to in fact be enough to essentially defeat the right to ---- the independent right to remove under Section 1442. But we have no cases indicating that. Unfortunately, that case has not actually come before any Federal Circuit ruling yet. And you want this case to be that one. We want this case to be that case. That's exactly right, Your Honor. Mr. Long, let me ---- I know you don't think this is what the action is, but let me nevertheless focus your attention on paragraph 2 of 1446B. Do you have it? I have it in front. I have it now. Okay. And look at that first introductory clause, the one that says, if the case stated by the initial pleading is not removable. That's correct, Your Honor. Okay. Now, how do you construe that phrase, or how do you think we should ---- I think we should ---- we should construe that phrase here in the ---- in this setting on these facts as being not removable under Section 1442, and that the independent removability under 1441 is irrelevant. And it's particularly irrelevant here because it would not have been successful. That one says on the face of it that it's removable. It doesn't say it's removable on the face of it. There's a lot of reasons why a case may not be removable. And one of the ---- the possibly removable is a different interpretation, but they didn't use the word possibly here. Would that reasoning apply to other kinds of removability? Let's say a case is removable on both diversity and federal question grounds, and you ---- they provide independent basis. And I don't know what habitat they want to construct, but let's say it's obvious from the beginning that it's removable on federal question grounds, but the diversity grounds removal doesn't become obvious or doesn't become ---- Right. It doesn't happen until later. Let's say one of the defendants dies or something. You know, something that makes the case suddenly removable on the second ground. On a new and different ground, I would argue, Your Honor, that under the successive removal cases, that in fact the new removal right would trigger another 30-day clock, okay, under the successive removal cases. But the court ---- this Court doesn't have to reach that question, because those are both under 1441. And I think that 1442 is separate and independent from 1441, and that it was intended to be separate and independent. And the separate right of a federal officer carries with it a completely different standard of federal issues that are at stake there. And I think that the rules are that 1441 shall be narrowly construed, so that case may come out differently in your hypothetical than 1442, which is to be broadly construed under Willingham. And then you've got 1446 caught in the middle. We'll give you a little more time. Don't worry too much about the clock. Thank you, Your Honor. The 1446 is sort of the, what is used to say, where the rubber meets the road. It's the intersection of the two statutes. So we have a situation where what you're saying, really saying, I won't put words in your mouth, but I think the effect of what you're saying is 1446 has to be construed narrowly when applied in the 1441 context, but applied broadly in 1442 context. 1442 context. That's exactly what we're saying. That's what you're saying. Because 1446 affects the rights under both 1441 and 1442. One, the rights are less important than in 1442. Let me ask you this. The opposing counsel, when he gets out, he's going to argue this because it's very prominent in his brief. Now, he points out that this is not a situation where you got hoodwinked or where there was no possibility of doing a totally timely removal under 1442. Your client found out about the federal officer, federal agent jurisdiction 10 days after the service of the complaint and, therefore, had 20 days. You knew the policy. There's two answers to that. One answer is that it's either 30 days or it's not. If we have 30 days under that statute, the plaintiff cannot shorten our time by delaying the notice by 10 days, okay, and give us only 20 days. That's one. The second is that the gamesmanship goes on, because at the same time, and this is established by the record, at the same time that the plaintiff was filing this lawsuit in Durham, we were in heated debate in the Skinnell case with the same law firm concerning Lockheed Martin's military contractor defense. Was this all raised with the district judge? This was. Excuse me. Yes, it was. All right. But the thing that's important here is that at the same time, he was waiving that he did not even argue, specifically said, we do not argue in the Skinnell case that this is untimely. So we had every reason to believe that those were the rules. So, actually, if you want to talk about gamesmanship, maybe had we thought that he had been aggressively taking this position, maybe we would run out and work harder to gather all of our evidence in order to be able to move in good faith under Rule 11 within 20 days instead of 30 days. But there was no reason to think that we didn't have 30 days given their prior position. But the important thing here, Your Honor, is that we have this important federal interest. We have the SR-71 Blackbird airplane was being built. It was a state-of-the-art, fastest airplane ever built, and it was being built for the Cold War for a very important federal interest that really, in the largest sense, is no less than trying to avert nuclear holocaust. And they're having to balance off, should we put asbestos in the skin of that plane so that it can fly at Mach 3.3 or not? And that's a federal decision. And when they instructed Lockheed Martin to carry out that federal decision, they did. And what Boyle says is that the state tort law cannot second-guess those kind of decisions. So we have this important federal right that is being vindicated. But that's the kind of argument that even state judges can understand. I mean, there's nothing immensely complex about that, you know, saying, well, you need expertise in RISA or some federal law. It's a pretty common-sense argument. To be honest with you, Your Honor, I agree that it's a common-sense argument. I've made it many times in various courts. And I do not agree with the court, respectfully, that that is something that the state courts get very easily. The federal courts are much more conversant with the military contractor defense. And Congress has already made that decision, that the federal officers are entitled to a federal forum to have those defenses tested. Thank you. We'll hear from opposing counsel. We'll give you a minute or so for a bottle if you wish to take it. A minute or two? Thank you, Your Honor. Yes, if you wish to take it. Good morning, Your Honors. Gil Purcell for the appellee. We don't challenge the right of removal. And it's not being denied here. What's at issue is you've got to exercise it within 30 days of when you know it's removable. And that's all that's going on here. What they want you to believe is that six days. They didn't know it was removable until they got the answer in that interrogatory. And they want 30 days from then, since you've been disputed. And see why. No, that's not a credible position on the face of this complaint. And that's what Judge Henderson found at page four of his opinion. I think you better spend your time on something else. Okay. The Lockheed knew from reading the complaint, as Harris says, on its face, the basis for a removal. It didn't say SR-71? Was a C-141 in there? Lockheed knew. I asked you a question. No, it doesn't say the specific airplane. It alleges the complaint, Your Honor. I'm sorry? The complaint alleges asbestos products. Why don't you put it in the complaint? Because we don't. I mean, that sounds like gamesmanship to me. You know exactly what it is. Ten days later on interrogatories, you have no trouble coming up with it. And you hide the green weenie, it seems to me. Why not put it in the complaint? There's no doubt about what you're doing. Well, I think there is, Your Honor. We don't hide anything from Lockheed. Ten days later? We didn't know until. You didn't ten days later? Yes, sir. That's when we alleged it in our interrogatories. Is that when you found out what your client was working on, all those high collections that he had that he remembers being in? You know, I have a hard time believing that your client suddenly remembered working on an SR-71. This is not one of those things that is easily forgotten, I would think. This is in the midst, Your Honor, of reconstructing his entire work history and every asbestos product he ever was around. It's not an isolated, focused circumstance. This man was in the Air Force for a long time. Our point is, if you attach— Look, it either was obvious, as you claim, in which case it was obvious to you as well as to them, and you should have put it in the complaint, or it was not obvious, which gives you an excuse for not putting it in the complaint, but then you can hardly say that they should have guessed what you had in mind. I mean, which is it? Was it obvious? I mean, was it obvious? It's a peculiar case where it's obvious to the defendant, but not the plaintiff, what the plaintiff is alleging. What was obvious was that the plaintiff worked at a federal enclave, and that's what Lockheed was involved in. Well, but not clear that the things he worked on were subject to the government contract of defense. There were things that were mandated by the government or subject to government specifications or any of those things. There are lots of things that people do in federal enclaves that don't satisfy the federal contract of defense. Of course, but Lockheed knows what it's doing on the federal enclave at the time it sees the allegations. How many years earlier? Pardon me? How many years earlier? Many years earlier, but it well knows what it's doing when it's there. You think it was only doing one thing on that time and that base? When it is sued and it is identified as having successors, you really are arguing that it was not clear to you, so you couldn't put it in the complaint, but it was clear to them. I find that so difficult to believe that I have to believe this is janssmanship. No, Your Honor. Just by standing there making an argument, you're adding to the ---- I'm not making much of an argument. I'm not speaking much, with all due respect. This is minutia. Why don't you try saying something useful? I'm trying to, Your Honor. You asked that we approach today ready to speak about Harris. The Court wanted us to speak about Harris. I'm prepared to speak about Harris. Sure. And Harris is actually very instructive in what it says. And the distinction here is, if Harris had failed to allege the citizenship of bankers, not the broker, then it raises a parallel circumstance here. Would the reading by the removing party, bankers, of the complaint, be done through the eyes of bankers so that they know what citizenship they have? What Harris says is you don't have to go dig back through records and find out that a broker is a citizen of a diverse state or not. But it doesn't address what if bankers wasn't alleged to be a particular state citizen. And that's our situation here. As Harris says, on the reading of the complaint, on its face, is there a basis for removal? Here, as Judge Henderson found, there was. You're being sued for product liability for failure to warn on a federal enclave while you're doing work there as a government contractor. That's in the complaint. You'd have to be not reading it correctly or fairly to conclude otherwise. In fact, Your Honor, an interesting question raised is, if the plaintiff so knows that it could raise federal enclave jurisdiction to the point that they disclaim it expressly in the complaint, how can the defendant believe that there's not any issue raised of federal removal jurisdiction when the plaintiff can read the complaint to disclaim it? Counsel, which are you arguing? Now I'm getting a little mixed up. Are you arguing that it was removable because it was federal enclave jurisdiction or it's removable because it's obvious on the face of the complaint that they were talking about this airplane or something very like it? Which are? Both. Okay. As to number two, was it obvious that it was or should have been obvious that it was this plane or something very much like it? If you lose on that issue, let's just hypothetically horror of horrors, we're so stupid we don't understand that, and you lose on that issue, are you arguing that you win on the other one anyway? Yes, because the interrogatories provided no new information and didn't make this a different lawsuit, as is referenced in the footnote of Judge Henderson. I think my question was a little different. That sounds like you're addressing the second one still. My question is, are you arguing that if all they knew was that it was federal enclave and their problem was they couldn't get 20 or 30 other people to go along with them, tough luck, it was removable, they just couldn't get their buddies to agree. I don't care if it's 30 people or one person. Is that your argument? I mean, when you said yes a moment ago, then you seem to go back to the other one. That's what I'm trying to separate. Yes, because I think that one is very linear and very straightforward. Which one? The first one. Okay. The more novel issue, and it's addressed in the district court's opinion, is is there some other new second 30-day that obtains here? Because we know there can be a second 30-day. And our point is is that even that period, they were on notice from the original pleading, and that's what the district court held. That's your first point again. You keep getting back to first base. Assume you lose on that. Assume that we say they did not, by looking, at the original pleading, tell that there was federal contractor removal. Even though it's alleged expressly. You're arguing with a hypothetical. Yes, even though it's alleged expressly. It's in the complaint. It's on the face of the complaint as guided by Harris. It's the fifth cause of action. What do you want me to say? Yes. Okay. Are you with me now? Yes, I am. I hope so. I don't want you to go back and say, oh, but they knew it anyway. That's not going to be a good answer. Let's say we come, you know, because we just don't see it your way, determined that they did not know and could not have invoked, could not reasonably invoke this removal jurisdiction, the federal contract jurisdiction until they got in the interrogatory. Okay? You got that mindset now? Yes, sir. Okay. You're still arguing that they lose? Yes. Okay. Make that argument. It's a 30-day period within which they have this right to remove that no one challenges had run. Nothing new in the interrogatories changed their understanding of the federal officer jurisdiction. I think you're back to point one. I don't think you're able to engage point two. I'm saying assume they would not have known and could not have known. Do you understand? A federal enclave or federal officer? Federal officer. I never said federal enclave. Okay. Federal officer. They did not have any inkling. Okay? Just assume that. Okay. And the first thing they hear about it, the first thing they understand about it is when they get the answer to it on the interrogatory. You say they still lose? Well, I am asking to be, to accept premises that I don't think are here. If they don't know. No. You think that happens at oral argument where you get asked a hypothetical question that you listen? Look, if you don't want to answer the question, over your time, we're not making any headway, you have yet to say a single word on the issues that I think is a significant issue in the case because you're stuck on this one fact which you can't get past. If you don't want to, that's fine. Then we will sit down and he will not have addressed. I guess facts can be very stubborn things, Your Honor, and I have trouble looking past them. So can lawyers. I understand. Thank you. Thank you for giving me another minute for rebuttal, Your Honor. If you feel you need it. Pardon me? If you feel you need it. Well, I just would have. No, I'm not saying you shouldn't, but I'm saying you should. I would just have this to say, Your Honor, that Harris clearly establishes no duty to investigate. So there's a narrow ground that this Court could decide the case on that, in fact, the federal enclave was not disclosed in the complaint itself. You'd have to go beyond Harris and say that they have to say that it's a federal enclave in order to say that it was not removable in the first instance on their theory of the case. I would ask this Court to go beyond that very narrow holding because we get here so rarely and, in fact, deal with the very issue that the district court held here, which is the timing issue. What about the fifth cause of action? Wasn't there some indication that this was at least a federal enclave? Well, Your Honor, all that's included there is that they worked on Air Force bases. Not every Air Force base is a federal enclave, and it takes a fair amount of investigation to find out what is a federal enclave. And there was nothing that indicated that it was federal? Well, they're Air Force bases, so you know they're federal. But the fact that to be a federal enclave, it has to be ceded to the federal government by the state, and then all that means is that it's a federal enclave. And that would have required some investigation. That required some investigation. And Harris doesn't require that. Correct. Correct, Your Honor. And my only other point is that we believe that the law should actually be that even if you knew that it was a federal enclave, that you still have a separate clock under 1442 because the decision of whether to remove on a federal enclave is a completely different decision than a decision to remove as a federal officer. If you don't know you're being sued as a federal officer, you might just choose to stay in state court because all that happens is that you decide to apply federal law instead of state law under the federal enclave, and they may be the same. And so there may be no reason at all to remove, but when you find out you're being sued as a federal officer, now you have these very important issues to defend, and the decision would be different. So we think it should be a separate clock. Thank you, Your Honor. Thank you, Keisha. Sorry, we'll stop for a minute.
judges: Beezer, Kozinski, Hatter